**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civ. A. No. 1:15-cv-2262-CMA-KMT

JESSE LUNT, Individually and On Behalf of All Others Similarly Situated

      Plaintiff,

v.

CYCLONE DRILLING, INC.

      Defendant.

---

**UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**
**AND STIPULATION OF DISMISSAL OF LAWSUIT WITH PREJUDICE**

---

1.    **INTRODUCTION**

    Plaintiff Jesse Lunt ("Lunt" or "Plaintiff") and Cyclone Drilling, Inc. ("Cyclone" or "Defendant") (collectively, the "Parties") have reached a settlement of the pending dispute concerning unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The settlement provides the hourly employees of Cyclone who received bonuses ("Class Members") during the relevant time period with an opportunity to make a claim for unpaid overtime damages.

    The settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information over several months, and attending mediation with experienced wage and hour mediator William Lemons. The terms of the settlement are reasonable and appropriate and fair to all parties involved. Accordingly, Plaintiff asks the Court to approve the

1

settlement and enter an order dismissing this lawsuit in accordance with the terms of the Parties' agreement.

2.   **BACKGROUND**

On October 13, 2015, Lunt filed this collective action lawsuit alleging Cyclone failed to pay certain hourly workers overtime as required by the FLSA (the "Lawsuit"). In the Lawsuit, Plaintiff alleged Cyclone failed to include certain bonuses in the Class Members' regular rate for the purpose of calculating overtime. *See* 29 U.S.C. § 207(a) & (e) (overtime must be paid based on "all remuneration for employment"). Plaintiff sought unpaid back wages, liquidated damages, pre- and post-judgment interest, and attorney's fees, expenses and costs.

Cyclone denied Plaintiff's allegations and asserted numerous affirmative defenses, including that the bonuses at issue were discretionary (and thus were properly excluded) and that the Class Members had been paid in full. Cyclone further argued that it acted in good faith with respect to its payment practices. Cyclone also denied that any violation of the FLSA was willful and that any class of similarly situated employees existed. Nevertheless, Cyclone determined avoiding the expense and expenditure of resources attendant to litigation was in the best interests of the company, and agreed to resolve the Lawsuit.

The Parties initiated good faith settlement discussions in March 2016.  Prior to discussing settlement, the Parties independently and thoroughly investigated the claims and defenses at issue through formal and informal discovery. Additionally, the Parties conducted an in-depth analysis of the potential damages, including reviewing and

processing business and payroll records for the class of current and former Class Members who did not join this lawsuit, interviewing witnesses, and investigating the business practices at issue. These efforts provided the Parties with great insight as to potential liability and the range of recovery at issue. Further, these efforts, coupled with each Party's thorough preparation and familiarity with the facts and law surrounding the alleged improper pay practice, allowed both parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation.

3.   **SETTLEMENT**

On May 12, 2016, the Parties mediated with experienced wage and hour mediator William Lemons. *See,* http://www.whlemonsadr.com/resume.html. With his assistance, the Parties reached a global resolution of this dispute. If approved by this Court, the agreement will resolve this matter in its entirety.

The Parties now seek Court approval of their Settlement Agreement. The Parties' confidential Settlement Agreement has been filed under seal as Exhibit 1.[1] The Agreement represents a fair compromise of a bona fide dispute concerning the legality of Defendant's compensation practices with respect to the payment of bonuses to the Class Members and the compensation practices at issue. The settlement covers the

---

[1] The Parties submit that, without confidentiality of the Settlement Agreement, there is an increased likelihood that Defendant would be exposed to further litigation (on claims that it denies), thus depriving Defendant of a benefit which was the basis for the settlement bargain. There is also a public interest in confidentiality in that it encourages and facilitates settlement negotiations and voluntary resolution of disputes, thereby preserving the resources of the Court. Because all relevant information will be provided to any interested party, no potential claimant is disadvantaged by such confidentiality. As there is no prejudice arising from in camera review but great prejudice should such review be denied, it should be permitted.

claims of the Class Members who worked during the relevant time period and provides them with a meaningful opportunity to recover the compensation they are allegedly due.

A.   GENERAL TERMS OF THE SETTLEMENT AGREEMENT

The key details of the proposed settlement are described below and are set forth in the attached Settlement Agreement. *See* Exhibit 1. Additionally, the Parties attach the proposed Notice and Claim forms that will be used to notify the potential class members of their right to participate in this settlement.  *See* Exhibits (1)(A) and (B).

1.   **Settlement Amount and Formula for Distribution**

The proposed settlement obligates Cyclone to pay up to a maximum settlement amount ("Gross Settlement Amount"). From the Gross Settlement Amount, all claims, including claims for attorneys' fees and costs, settlement administrative costs, and an enhancement payment for Jesse Lunt will be deducted. Because the settlement follows the opt-in structure of the FLSA, only potential class members who file completed consent forms will be eligible to receive a settlement payment. 29 U.S.C. § 216(b) (only workers who consent in writing are part of an FLSA collective action). The portion of the Net Settlement Amount attributed to workers who elect not to participate will, of course, be returned to Defendant following the close of the settlement opt-in period.

The balance of the Net Settlement Amount will be apportioned among the potential settlement class members who elect to participate in the settlement. Each settlement class member who elects to receive a settlement will receive their actual pro-rata share of the money they are allegedly owed based on corrected regular rate calculations incorporating the bonuses at issue. To calculate each settlement class

4

member's apportioned share of the Net Settlement Amount, the Parties used records of each class member's actual compensation, bonuses received, and days worked during the relevant time period to determine the overtime owed. This means that a settlement class member who timely files a properly executed Settlement Consent Form and claims his portion of the Net Settlement Amount will be eligible to receive a settlement payment from the Net Settlement Amount which accurately reflects the compensation owed for those time periods in which overtime was worked and bonuses were paid.

The Parties further agree that 50% of the individual settlement amount shall be subject to all withholding, liens, garnishments, withholding orders and other deductions as required by law, as payment in full compromise and settlement of all claims for alleged unpaid overtime back pay or compensation. The remaining 50% of the individual settlement amount shall represent payment in full compromise and settlement of all claims for liquidated damages. All of these amounts shall be paid from the Net Settlement Amount.

**2.     Proposed Notice Program to Administer the Settlement**

In accordance with the Settlement Agreement, Class Members who fall within the settlement class will receive a copy of the Notice of Settlement and the Settlement Consent Form. *See* Exhibits (1)(A) and (B). These documents will be mailed to the members of the class by the Claim's Administrator. Individuals who have provided Cyclone with an email address will also receive the claim materials by email as well. Additionally, the Parties have agreed to provide an identical reminder notice by mail and email (if applicable) to the Class Members at least 30 days before the close of the opt-in

period.

These settlement documents explain the terms of the settlement, the scope of the release, the estimated settlement amounts, and the steps that must be taken to participate in the settlement. *See* Exhibits 1(A) and (B). Individuals who elect to participate in the settlement will be required to return their properly executed Settlement Consent form to the Claims Administrator and/or Plaintiff's counsel within 60 days from the date of mailing/emailing.

Settlement checks will be prepared by the Claim's Administrator approximately 30 days from the close of the opt-in period. Class members will have 180 days to present their checks for payment.

3. **Scope of Release**

In exchange for compensation under the settlement, those individuals who timely return a Settlement Consent Form will release Cyclone from all state and federal wage related claims asserted or that could have been asserted in this Lawsuit. The specific release language is as follows and is applicable only to those individuals who timely return properly executed claim forms:

> "I waive, release, and discharge any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Cyclone Drilling, Inc., its past, present, or future parent companies, subsidiaries, affiliated companies, divisions, predecessors, successors, transferees, assigns, and any merged entities, and any current or former officer, director, employee, insurer, owner, member, partner, investor, shareholder, agent, representative, legal counsel, accountant, trustee, executor, administrator, real or alleged alter ego, transferee, and assign of all such entities, for unpaid wages; underpayment of wages; unpaid overtime, bonuses, incentive compensation, or any other elements of compensation; liquidated damages; penalties; premium pay; interest;

attorneys' fees; costs; equitable relief; or other relief available under the FLSA or any other federal, state, or local law relating to the payment of wages during the time period beginning three (3) years back from the date I sign this Claim Form and Release by opting-into this lawsuit and ending on the date I sign this Claim Form and Release." ."

4.     **THE COURT SHOULD APPROVE THE SETTLEMENT AND DISMISS THE LAWSUIT WITH PREJUDICE**

Over the life of this collective action, the Parties conducted formal and informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in this collective action. Based upon the Parties' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Plaintiff's Counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Class Members pursuant to this Settlement Agreement, the Parties have concluded that this settlement is fair, reasonable, adequate, and in the best interests of the Parties.

Plaintiff now seeks Court approval of the Parties' agreed settlement. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements); *Camp v. The Progressive Corp, et al*, 2004 WL 2149079 (E.D. La. 2004); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

Here, the settlement represents a fair compromise of a bona fide dispute concerning the legality of Defendant's compensation practices with respect to the Class

Members. Because the FLSA's provisions are mandatory, employees' claims for back wages or overtime may not be compromised absent either supervision by the Secretary of Labor, *see* 29 U.S.C. § 216(c), or approval by the court. *See Lynn's Food Stores, Inc.* v. *United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

The Tenth Circuit has recognized the res judicata effect of a court-approved settlement of FLSA claims, where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the settlement is fair and reasonable in the judgment of the Parties. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

A.      BONE FIDE DISPUTE EXISTED

Congress has recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).[2] Due to this unequal bargaining power, Courts must ensure that a

---

[2]      *Brooklyn Savings Bank*, 324 U.S. 697 (1945)(requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986)(in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

settlement agreement, following an FLSA claim, must be the product of a bone fide dispute.

In the instant case, the Parties contested the claims and defenses asserted. Plaintiff alleged that Class Members received certain non-discretionary bonuses (including but not limited to, Safety Bonuses, Annual Bonuses, Bottom Hole Bonuses, Deadline Bonuses, and Oil Based Mud Bonuses) that Cyclone excluded from the relevant overtime calculations. Cyclone argued that most, if not all, of the contested bonuses were discretionary in nature and therefore excludable from the Class Members' regular rates.

Further, Plaintiff argued that the Class Members were similarly situated in the terms of relevant job duties and compensation practices, regardless of the length of time or location worked for Class Members. On the other hand, Cyclone maintained that all Class Members are not similarly situated and the cases should be tried independent of each other.   The Parties further disagreed on whether Plaintiff could satisfy their burden to demonstrate that Cyclone acted willfully, which in turn affects whether Plaintiff could recover compensation for two (2) years or three (3) years.  *See* 29 U.S.C. § 255. Plaintiff also contends that Cyclone would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. Defendant maintained that, at all times, it acted in good faith, and damages (if any) should be unliquidated and be recovered only for a two (2) year period.

The current settlement before the Court is the result of a bone fide and contested

dispute where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to continue settlement discussions for several months, this case would have not been resolved.

### B.   THE SETTLEMENT IS FAIR AND REASONABLE

The Parties agree that the terms of the settlement are fair and reasonable. To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA's policy rationales. *Solis v. Top Brass, Inc.*, Civ. A. No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014) (Tafoya, M.J.).

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair[.]'" *Felix v. Thai Basil at Thornton, Inc.*, Civ. A. No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015) (Shaffer, M.J.) (finding settlement reached by the parties to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions); *Solis*, 2014 WL 4357486 at *3 (noting that a "presumption of fairness attaches to the proposed settlement"). When determining whether a settlement is fair and reasonable, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery. *Id.*

Here, the settlement is a result of arm's-length negotiations by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement, the notice program, and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations, and are not the result of fraud or collusion.

All that said, there can be no question that this Settlement Agreement represents fair value for the workers. Numerous Class Members will receive back wages and penalty damages under federal and state law without the risk or expense of trial. Further each individual who has agreed or elects to participate in this settlement will be

able to recover a specified amount calculated based upon his/her specific employment history. Indeed, the amounts recovered under the agreement are fair on both a collective and individual basis.

### 1.    The Enhancement Award is Reasonable

The proposed Enhancement Award to Lunt is intended recognize his initiative and efforts on behalf of the class and the time and effort he contributed to this lawsuit and the settlement.   The modest amount of the requested payment is eminently reasonable.

### 2.    The Requested Attorney's Fees and Costs Are Reasonable

Plaintiff and the Putative Class Members are entitled to recover their attorney's fees and costs for their claims for overtime pay. *See, e.g.,* 29 U.S.C. § 216(b).  Plaintiff's counsel believes that the Settlement Agreement's provision concerning attorney's fees and costs is fair and reasonable, as they are only seeking attorney's fees of thirty-five percent (35%) of the Gross Settlement Amount and reimbursement for expenses/costs. Cyclone does not oppose these requests.

As many courts have noted, the "customary contingency fee" awarded to class counsel in a common fund, FLSA collective action settlement such as this is approximately 30-40 percent. *See, e.g.,  Whittington v. Taco Bell of Am., Inc.*, Civ. A. No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (Tafoya, M.J.) (approving award of attorney's fees of 39% of total settlement and noting "this [request] is within the normal range for a contingent fee award" in FLSA collective action); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* Civ. A. No. 09–

cv–01543–REB–KMT, 2010 WL 5387559, at *5–*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (*citing, inter alia, Vaszlavik v. Storage Technology Corp.,* No. 95–B–2525, 2000 WL 1268824, *4 (D.Colo. Mar. 9, 2000)("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable")); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

Thus, Plaintiff's counsel's request for a contingency fee is reasonable and appropriate—particularly in light of the substantial recovery made for the Class Members.

### 3.      The Proposed Notice Is Reasonable

Approval of the Settlement Agreement will enable the settlement documents (attached as Exhibits 1(A) and (B)) to go out to the Class Members in a manner best calculated to ensure that they are alerted to the terms of the settlement.  Every worker who elects to participate in this case as a result of the notice will know exactly what they are getting, and what they are giving up, prior to making the decision to participate.

The Parties' proposed notice – which will be sent by a Plaintiff's counsel via first class mail and email (if an email address is available) - provides the Putative Class Members with adequate notice of their rights under the Settlement Agreement. Moreover, the Settlement Consent Form is a simple short form that permits Class Members to claim their money quickly and easily.

In addition to using a straight-forward Notice of Settlement and the Settlement Consent Form, the Parties also agreed to issue notice by mail and email, a 60-day notice period, and a reminder to the Class Members.  All of these procedures will ensure that the notice documents are timely delivered and received by the individuals who are eligible to make a claim.

5.    **CONCLUSION**

The terms of this settlement are fair, reasonable, adequate, beneficial and in the best interests of all parties. The settlement was reached following the exchange of information, data, and extensive negotiations. Because of the various defenses asserted by Cyclone, the Class faced the possibility Cyclone could have successfully defeated or limited some or all of Plaintiff's claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime. Thus, the settlement represents a fair compromise of a bone fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possibly appeal.

The Parties hereby request that the Court: (1) approve this settlement, including

all of the terms set forth in the Settlement Agreement; (2) direct the Parties to implement and complete the notice and claims process as set forth in the Settlement Agreement; and (3) dismiss this lawsuit and the claims of Plaintiff and all class members with prejudice.

Respectfully Submitted,

By: */s/ Michael A. Josephson*
    Michael A. Josephson
    Texas State Bar No. 24014780
    Lindsay R. Itkin
    Texas State Bar No. 24068647
    **FIBICH, LEEBRON, COPELAND,**
    **BRIGGS & JOSEPHSON**
    1150 Bissonnet St.
    Houston, Texas 77005
    Tel: (713) 751-0025
    Fax: (713) 751-0030

    **AND**

    Richard J. (Rex) Burch
    Texas State Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    Tel: (713) 877-8788
    Fax: (713)877-8065

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

## CERTIFICATE OF CONFERENCE

I hereby affirm that Counsel for Plaintiff conferred with Counsel for Defendant regarding the subject matter of this Motion and that Defendant is unopposed to the relief sought herein. Following the Parties' successful mediation, Counsel for Plaintiff and Counsel for Defendant exchanged numerous drafts of this Motion, the proposed Settlement Agreement, Notice of Settlement, and Claim Form and Release. The documents filed herewith as restricted documents represent the Parties' final agreement as to the scope of the settlement and notice to class members.

*/s/ Lindsay R. Itkin*
**Lindsay R. Itkin**